The fifth case for argument today is Urzua Ortega v. Garland. Ms. Cobb. Good morning, Your Honors. May it please the Court, my name is Erin Cobb and I represent the petitioner, Mr. Israel Urzua Ortega. The central issue in this case is whether the board and the immigration judge disregarded relevant and probative evidence in support of the petitioner's application for withholding of removal. The judge held that because 20 years ago, various Mexican government agencies assisted the petitioner when he was threatened and harmed, there was no indication they would react differently today. This conclusion and the opinion was deficient because the Court never examined the current state of protection in Mexico, how it's changed over the last 20 years, and how those changes would directly affect the government's willingness and ability to protect the petitioner. Now, the respondent did argue that the judge did address current conditions in Mexico and specifically pointed to page 62 of the record, which is page 4 of the judge's opinion. There, the judge does in a single sentence briefly mention generalized crime, complicity, collusion, lack of resources. However, after that very brief mention, the judge concludes, and I'll quote it if I can, however, generalized crime, conditions of violence, and harsh conditions are not enough to establish a pattern and practice of persecution. There are two issues primarily with this. One, the analysis or lack thereof, and two, where this conclusion and this reference lies in the greater opinion of the judge. As to the analysis, once again, the judge said generalized crime and harsh conditions are not enough. The petitioner never argued that he was afraid to return due to generalized violence or harsh conditions in Mexico. He never said that he was afraid to be a victim of random violence or crime on the street. is now so severe that he cannot rely upon the government for protection like perhaps he could have 20 years ago. The second issue is where this reference lies in the opinion itself. The judge mentions it only when he's discussing whether there's a pattern of practice of harm, and the petitioner never argued there was a pattern and practice of harm against his social group. Instead, he argued that he would be individually targeted due to his membership in a particular social group, notably his family. Now, in the preceding paragraph in the opinion, the judge does mention and analyze whether he would be singled out for persecution. In that paragraph, the judge concludes, there is no indication that applicants' reports of future threats would not be taken seriously, which would be in contrast to their responses in the past. Prior to this conclusion, in the opinion, there is absolutely no mention of any current conditions within the state of Mexico. None. If the judge had examined current conditions in Mexico and the changes that occurred over the last 20 years, the judge might have noticed things like the United Nations said that 98% of crimes are unsolved, that impunity is the norm, that impunity is alarming when it comes to disappearances, that the State Department, our own State Department, says that the vast majority of crimes, like homicide, torture, kidnapping, are committed with impunity. And that country conditions show that police are often in collusion with drug cartels. That in fact, just three years ago, the head of the federal police in Mexico was arrested in the United States and charged with accepting bribes. That 120 police officers in a single neighborhood in Mexico City, where the petitioner is from, were found to be protecting a cartel. The Mexico of 20 years ago is simply not the Mexico of today. This court has repeatedly stated that the judge and the board must consider issues and announce their decisions in terms sufficient to enable the court to ensure that the board and the judge have heard and have thought and have not merely reacted. They failed to do so in this case. Not just with the country conditions, but also in the change of my client, the petitioner's, personal circumstances. In the past, when the petitioner was in Mexico and was harmed or targeted, every time that he was assisted by a government agency, he was an employee of that agency. When he was shot, he was a member of the army and his sergeant and captain investigated. When he was threatened by phone, he was a firefighter and his captain transferred stations. When he was chased through the streets by a car in which someone was brandishing a weapon, he was a firefighter still. He was able to call the equivalent of 911 and use the special access code given to him as a first responder that allowed an immediate response. The petitioner no longer has such special access and the judge never pointed it out or considered it. Again, the board and the judge failed to announce their decision in terms sufficient for this court to ensure that they heard and thought and not merely reacted. And we do ask that this court would remand for consideration. Thank you. Thank you, counsel. Ms. Thomas-Doris. Good morning, your honors. May it please the court, Nicole Thomas-Doris for the government. The acts of private individuals, pardon me, do not constitute persecution unless the government is complicit in those acts or is unable or unwilling to take steps to prevent those acts. Substantial evidence here on this record supports the conclusion that petitioner did not demonstrate that government element. Mexican officials were responsive to the harms petitioner suffered in the past. And this record does not compel the conclusion that Mexican officials would not be responsive in the future. Should it make a difference to us? How do we evaluate that 20 years has passed and that Mr. Ortega is no longer a government employee? How should that weigh in our analysis? Yes, your honor. The court does need to look at the timeline because that is the fact. Those are the facts of the record. But we don't just have facts from 20 years ago. We do have concurrent or at the time of the withholding of proceedings. The person that petitioner feared was in prison in Mexico at that time. And that sentence stemmed from a conviction, not from a decade past. It was from two years, approximately two years prior to that time when testimony was taken in these removal proceedings. So with that imprisonment of the person he fears, we do have a connection. Yes, it is not for a case. So then we're getting threatening calls from the guy while he's in prison now. If you're saying we do have this link to now, the guy's in prison now. Yes, your honor. Ortega is getting threatening calls even though the guy is in prison. Tatcho. Yes, your honor. And that, of course, is one of petitioner's arguments is that the agency didn't consider that specific aspect. The agency, the respondent's argument is that it considered the whole record. And as far as those threats, we do have, I'll note that the immigration judge does acknowledge them. And we do see that the threats that happened in the past were also, at least we don't have evidence that they were perpetrated by Tatcho directly. And yet the government was responsive then to those threats. So if you take that aspect of the government being responsive to threats not enacted by him directly with the fact that they are not, the government is not powerless against Tatcho. They have put him in prison. Should he have, we do have testimony, yes, from the family members that he has reached outside of prison. But again, we have to ping pong back. We also have evidence that the government responds to these threats. So even if those threats are stemming from Tatcho in prison, we still have evidence here that the government has, a Mexican government has acted and responded to these threats. And so it's a two pronged inquiry because Mr. Ortega has to show that the government is unwilling and unable to protect him from these threats or Tatcho. So I hear you to be saying there is evidence that the government is willing to protect him. What about the IJ and the BIA addressing that the government is able to protect him? Well, I do, I would point out that it's unable or unwilling. So we do have, I can't think of the case law at this point, but for example. And so a petitioner only needs to show one. Yes. The government can't do one. For example, we had facts in one case where the police department had absolutely no resources and required an applicant to bring a perpetrator to them. If you go find him, we will act against that person. And so that would be willing on the part of that police department, but not able, not having the resources. And so, yes, that is my answer that it's unwilling or unable. And as this court has pointed out, the board has yet to explain exactly how far from perfect law enforcement or no crime a government has to fall or to be placed, how far from perfection is unable. So we do see, for example, if there were threats, or yes, there are threats on this record, six months prior to the hearing. It's not that the imprisonment of the person he fears, Tacho, needs to eradicate all threats. It's that the government is taking an action, an action that is strong, a five to six year sentence. It's not, for example, like we see in Sarhan where it's six months for an honor killing. So, I'm sorry, I lost my train of thought, Your Honor. We do have the evidence that he's in prison, and that even with threats, I was going to say, the argument is that even with threats, that's enough for substantial evidence to support the agency's determination that the Mexican government, or that petitioner didn't demonstrate that the Mexican government was unable or unwilling to prevent the harm that he fears in the future. Does that answer your question? I'm sorry, Your Honor. That's your answer. Okay, thank you. I want to further point out that the immigration judge's decision, as Petitioner's Counsel pointed out, does not detail country conditions prior to that paragraph discussing being singled out for future persecution  Now, we do have the immigration judge's general statement at the outset of the decision stating the court has considered the documents in the record. The government takes much stock in that, and the immigration judge is stating here that the immigration judge considered all of the documents in the record. And in that paragraph, on page 62, the immigration judge states there's no indication that Petitioner, his reports of future threats would not be taken seriously by Mexico. And again, that given Tatra's current incarceration, there is no indication that he would not be prosecuted again for future crimes. Petitioner relies heavily on the fact that that is admittedly very simple, very short analysis. However, Respondent also relies on that analysis. There is no indication. The immigration judge has looked at the whole record and stated there's no indication based on the entirety of the record, which includes, yes, those country conditions with this government action that has come up even to the two years prior to the withholding only hearing. If that were it by itself, it's not as strong an argument as it is on this record, where we do have the immigration judge discussing in detail the country conditions in the pattern and practice paragraph and then in the next section under the Convention Against Torture, analyzing the Convention Against Torture. We have the immigration judge there enumerating, specifically enumerating aspects of those country conditions. That petitioner pointed out that not just stating, oh, I've looked at the country conditions, looking at pervasive corruption and crime, going through the specific aspects of those country conditions. So I would say that the immigration judge, yes, perhaps could organize that section or change that analysis to be present in that first section on future harm, but it is there in the decision, and the agency did look to the full record. That being said, I would like to point out some country conditions that are in the record. For example, we do have some evidence on this record of the government of Mexico taking steps to enforce laws against corruption. So, for example, we have evidence in here that the president has taken specific legislative and political actions to combat corruption, indeed endemic corruption. For example, there's been reform in that corruption is the type of charge now that could trigger a seizing of assets or a pretrial detention. And indeed, this record does not contain the full Department of State country report, but I will say that the full report available in a PDF on the Department of State's website, which this court may take judicial notice of, on page 22. Thank you, Ms. Thomas-Thomas. Thank you. Thank you, Your Honor. Anything further, Ms. Cobb? Okay, thank you very much. The case is taken under advisement.